240 F.Supp. 672 (1965)
In the Matter of the Examination of D. I. OPERATING COMPANY.
Misc. No. 27.
United States District Court D. Nevada.
March 18, 1965.
*673 *674 Morse & Graves, Las Vegas, Nev., J. A. Donnelley, San Diego, Cal., Benjamin Alpert, Great Neck, N. Y., for D. I. Operating Co.
John W. Bonner, U. S. Atty., Las Vegas, Nev., Fred B. Ugast, Chief, Gen. Litigation Section, Tax Dept., Dept. of Justice, Washington, D. C., for United States.
THOMPSON, District Judge.
Revenue Agent John E. Shannon was assigned to investigate the income tax returns of D. I. Operating Company, a corporation, which operated the gaming casino at the Desert Inn Hotel in Las Vegas, Nevada. On September 28, 1961, Revenue Agent Shannon issued a summons to D. I. Operating Company and to Allard Roen, its Secretary, calling for the production of the following records for the fiscal years ending November 30, 1956 through November 30, 1960, inclusive:
1. Cash sheets
2. Pit credit cards
3. Game credit cards
4. Daily records of debits and credits to customers' I.O.U.'s
5. Casino credit cards
6. Casino credit slips.
By letter dated October 9, 1961, Mr. Roen informed Mr. Shannon that pit credit cards and game credit cards were available for one month in 1957, four months in 1958, and ten months in 1959, that no record of debit and credit entries to customers' I.O.U. accounts was available, and that he and the corporation would not produce the pit credit cards, game credit cards, casino credit cards and those casino credit slips used to record safekeeping transactions. It was asserted that all such records were irrelevant to an inquiry into the income tax accountability of the corporation.
On October 19, 1961, these proceedings were instituted for enforcement of the Internal Revenue summons under the authority of 26 U.S.C. § 7604. On December 28, 1961, the District Court entered an order directing compliance with the summons. An appeal was taken and supersedeas bond posted. On August 22, 1963, the Court of Appeals for the Ninth Circuit reversed and remanded to the District Court for specific findings as to the relevancy and materiality of the records sought (D. I. Operating Company v. United States, 321 F.2d 586).
A hearing was held before the Court on October 5 and 6, 1964, and evidence was received bearing on the relevancy and materiality of the records. On October 8, 1964, the Court entered Findings of Fact and Conclusions of Law and ordered compliance with the Internal Revenue summons, with minor limitations. The Court found as a fact from the evidence presented: "Normally the Game Credit Cards and Pit Credit Cards are not retained as casino records but are destroyed after a few days. Some of these cards were retained by Respondent *675 and are available in response to the subpoena." The Court held, in part:
"Section 7602 of the Internal Revenue Code authorizes examination of any books, papers, records or other data relevant or material to an inquiry into the correctness of a return and the determination of any person's tax liability. No worthwhile or practical distinction can be made between permanent accounting journals, ledgers, invoices, receipts and the like, and so-called temporary records or entries concerning transactions affecting taxable income. Whatever relevant and material records are at hand are subject to disclosure."
The Court ordered the production of the records for examination on November 9, 1964. No appeal was taken from the order and it is final.
On November 9, 1964, Revenue Agent Shannon and associates, at the time and place appointed, were informed by Mr. Roen and two other corporate officials that the Game Credit Cards and Pit Credit Cards called for by the subpoena and Court order could not be found.
On December 8, 1964, on motion, this Court issued an order to D. I. Operating Company and Allard Roen to appear and show cause why they should not be punished for contempt for failing to produce the records and documents called for by the Internal Revenue summons issued September 28, 1961 and the Court order entered October 8, 1964. A hearing was held on December 15, 1964, and officers and employees of D. I. Operating Company testified, in substance, that in 1961 when the Internal Revenue summons was served, the contested records were available and were placed in an open, unmarked carton on a shelf in the vault in the back of the Cashier's Cage; that no special instructions were given to anyone regarding the specific records; that in April, 1963, reconstruction required the removal of the Cashier's Cage and vault; that all contents were removed to a new Cashier's Cage and vault or to a warehouse; that no special instructions were given regarding safekeeping of the contested records; that at the time of the hearing on October 5, and 6, 1964, the exact location of the contested records was unknown but officials believed they could be found; and that since the order of October 8, 1964, a thorough and exhaustive search has been made for the contested records and they have not been found. It is represented that Respondents cannot be in contempt because they cannot comply with the summons and Court order, and that some time during the years of litigation  perhaps during reconstruction  no one knows when, the contested records were inadvertently, albeit in good faith, lost or destroyed. It is suggested that contempt may be found only for wilful contumacious defiance and disobedience.
First, it should be observed that this is a proceeding in civil contempt. It has not only been processed as such procedurally, but its objective is to compel compliance with the Internal Revenue summons and Court order. This is the hallmark of civil, as distinguished from criminal, contempt. "While particular acts do not always readily lend themselves to classification as civil or criminal contempts, a contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public." McCrone v. United States, 1938, 307 U.S. 61, 59 S.Ct. 685, 686, 83 L.Ed. 1108. Cf. Gompers v. Buck's Stove & Range Co., 1911, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797; United States v. Montgomery, D.C.Mont., 1957, 155 F. Supp. 633.
Although an Internal Revenue summons is, in the first instance an administrative process authorized by Congress (26 U.S.C. § 7602), which, standing alone, does not invoke the judicial power of the United States for its enforcement (as contrasted with a judicial subpoena), Congress has, in Section 7604, provided judicial remedies for enforcement which accord to the Internal Revenue summons like dignity to that of *676 a subpoena issued by a Court. We are concerned with the public duty to respond to such process,[1] and approach the problem in the light of the comment of Judge Learned Hand in Loubriel v. United States (2 CCA 1926), 9 F.2d 807: "The question is no less than whether courts must put up with shifts and subterfuges in the place of truth and are powerless to put an end to trifling. They would prove themselves incapable of dealing with actualities if it were so, for there is no surer sign of a feeble and fumbling law than timidity in penetrating the form to the substance."
If this were a prosecution for criminal contempt, wilfulness would be an essential element of the offense. United States v. United Mine Workers, 1946, 330 U.S. 258 at 303, 67 S.Ct. 677, at 701, 91 L.Ed. 884: "One who defies the public authority and willfully refuses his obedience, does so at his peril. In imposing a fine for criminal contempt, the trial judge may properly take into consideration the extent of the willful and deliberate defiance of the court's order * * *." See: Nilva v. United States, 1956, 352 U.S. 385, 395, 77 S.Ct. 431, 1 L.Ed.2d 415.
On the other hand, wilfulness, in the sense of a defiant, contumacious disobedience of court process or order, is not required to be proved to establish civil contempt. McComb v. Jacksonville Paper Co., 1948, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599: "The absence of wilfulness does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." See United States v. Montgomery, D.C.Mont., 1957, 155 F.Supp. 633; Babee-Tenda Corp. v. Scharco Manufacturing Co., S.D.N.Y.1957, 156 F.Supp. 582.
In civil contempt, imprisonment may be imposed to enforce obedience to the court order or process, or a remedial fine assessed to compensate plaintiff for damages resulting from the disobedience of the order or process and for expenses incurred in the enforcement thereof. United States v. United Mine Workers, supra; Nye v. United States, 1941, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172. Imprisonment is not justified, however, unless the Court finds that the Respondent is able to comply, and if the contested records cannot be produced, the Court may not imprison Respondent to compel their production, although the possible propriety of a temporary detention for civil contempt has been suggested as a method of testing the veracity of Respondents' asserted inability. Oriel v. Russell, 1929, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419; Maggio v. Zeitz, 1948, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476.
If this were a prosecution for criminal contempt, the evidence might be held to support a finding of wilful disobedience, taking into consideration the facts that Respondents had the contested records on September 28, 1961 and impliedly represented to the Court that they were still in existence at the hearing on October 5 and 6, 1964, resulting in an uncontested finding to that effect, and there is no conclusive evidence that the contested records are not still in existence. Cf. Jurney v. MacCracken, 1935, 294 U.S. 125, 55 S.Ct. 375, 79 L.Ed. 802; United States v. Bryan, 1950, 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884; McPhaul v. United States, 1960, 364 U.S. 372, 81 S.Ct. 138, 5 L.Ed.2d 136; United States v. Johnson (2 CCA 1957), 247 F.2d 5; United States v. Goldstein (2 CCA 1939), 105 F.2d 150. Such a conviction would legally sustain a sentence of imprisonment *677 for the individual Respondent, Allard Roen, as punishment for past contemptuous conduct.
In consideration of the failure to produce the contested records as a civil contempt, however, the conclusion is reached that a sentence of confinement is not legally sustainable as a sanction to enforce obedience because the Court, on the evidence presented, cannot in good conscience find that the contested records were, on November 9, 1964, and now are in existence and produceable. This Court has no reason to discredit the testimony of the employees and officers of D. I. Operating Co. to the effect that an exhaustive search had been made and the records had not been found and they may have been lost or destroyed when the Cashier's Cage was moved during remodeling.
We thus are remitted to a consideration of whether a compensatory fine for civil contempt is justified and in what amount. We conclude from the evidence that Respondents are in contempt of the order of this Court and of the administrative summons (subpoena duces tecum) issued by the Internal Revenue Agent on September 28, 1961. Such a subpoena is a basic judicial and administrative writ or process without which judicial and administrative machinery cannot function. In the language of the Supreme Court (United States v. Bryan, 1950, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884:
"On the other hand, persons summoned as witnesses by competent authority have certain minimum duties and obligations which are necessary concessions to the public interest in the orderly operation of legislative and judicial machinery. A subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase. If that were the case, then, indeed, the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures, would be a nullity. We have often iterated the importance of this public duty, which every person within the jurisdiction of the Government is bound to perform when properly summoned. See e. g., Blair v. United States, 1919, 250 U.S. 273, 281, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919); Blackmer v. United States, 1932, 284 U.S. 421, 438, 52 S.Ct. 252, 255, 76 L.Ed. 375 (1932)."
These Respondents, in 1961, chose to resist the process, and, as was their right, to resist the judicial proceedings for its enforcement, activities which have consumed over three years. Such right to judicial review of the validity of the process implies a correlative duty to safeguard the contested records pending final judicial determination of whether they must be produced. While service of a subpoena duces tecum does not place the records sought in custodia legis, in the strict sense, such service does place the subpoenaed person on formal notice that the records are required for judicial or administrative proceedings. The special character thus accorded to the subpoenaed records, in the opinion of this Court, imposes on the Respondent in possession of the records a duty of care to safeguard them so that they will be available on the effective date of the subpoena, and a violation of that duty subjects the Respondent to appropriate sanctions for civil contempt. In any event, the facts of this case demonstrate gross inattention to and reckless disregard for the preservation of the contested records during three years while Respondents were invoking judicial intervention on their behalf in this Court and in the Court of Appeals for the Ninth Circuit, conduct which can be characterized as nothing less than contemptuous, not only of the Internal Revenue summons, but also of the judicial machinery established to prevent and foreclose abuse of such administrative process. In this perspective, Respondents are in no different position than if evidence proved they had deliberately destroyed the records to *678 avoid obedience to the subpoena and court enforcement order.
We have remaining the question of the amount of a compensatory fine. Actual damages are unprovable. No one knows what impact the information contained on the contested records might have on the income tax accountability of D. I. Operating Company. We are relegated to an assessment of the costs incurred by the Government in the proceedings. As evidence, the Government has submitted a detailed affidavit itemizing the hours spent by Department of Justice and Internal Revenue Service attorneys, agents and employees and for printing and travel expenses in connection with all proceedings to enforce the Internal Revenue summons. Such actual costs total $7,950.35. Respondents do not dispute the computation itself, nor the itemized expenses included in the computation. Respondents do contend, however, that any assessment of compensation for expenses must be limited to the expenses incurred in the contempt proceeding only; that is, in connection with the Petition for Order to Show Cause filed December 4, 1964, and the hearing, arguments and briefs following such petition. The cases relied upon involve compensatory fines for a violation of court decrees injunctive in character. Yanish v. Barber, (9 CCA 1956), 232 F.2d 939; Christensen Engineering Co. v. Westinghouse Air Brake Co., (2 CCA 1905), 135 F. 774; Parker v. United States (1 CCA 1946), 153 F.2d 66, 163 A.L.R. 379; Krentler-Arnold Hinge Last Co. v. Leman (1 CCA 1931), 50 F.2d 699; Babee-Tenda Corp. v. Scharco Manufacturing Co., S.D.N.Y. 1957, 156 F.Supp. 582. We do not discern their applicability to our case, inasmuch as it is clear that a complainant in an injunction suit should not be entitled to reimbursement of all his expenses of litigation in the main action which resulted in the injunctive order allegedly violated, the violation constituting the contempt. We have been cited to no authority defining the scope of a compensatory fine assessable for civil contempt for disobedience of a subpoena ad testificandum or duces tecum.
These proceedings for enforcement of an Internal Revenue summons under 26 U.S.C. § 7604 are sui generis. We have concluded that the initial service of the summons (subpoena) on Respondents imposed a duty with respect to the records. True, coercive sanctions cannot be imposed until after judicial review (Reisman v. Caplin, 1964, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed. 2d 459), but it does not follow that the duty to comply does not rest upon the basic subpoena process or writ, rather than upon the order enforcing it. In essence, we are concerned with a subpoena as enforced by court order, not with the court order standing alone. If the subpoena process, whether exercised under the inherent powers of the judicial department or under Congressional grant of power to administrative agencies, is to mean more than a by-your-leave supplication to the subpoenaed respondent, it must be held to have an effect and to impose enforceable duties as of the date of service. In proceedings for civil contempt for disobedience of a valid subpoena as ultimately enforced, the Court may award against the contemnor as a compensatory fine a sum reasonably calculated to compensate the petitioner for all costs incurred in the proceedings to enforce the subpoena.
The Court is disposed to enter judgment in favor of the United States and against D. I. Operating Company, a corporation, and Allard Roen, jointly and severally, for $7,950.35 as a compensatory fine for contempt. Recognizing that proof of the costs of enforcement incurred by the Government rests upon an affidavit filed after the contempt hearing, the Court grants to Respondents fifteen days from date in which to file a motion to re-open the case for further hearing and evidence with respect to such enforcement costs if Respondents are so advised. Failure to so move will not, of course, waive Respondents' basic contenthat *679 any compensatory fine must be limited to expenses incurred in the contempt proceedings only. In default of such motion, judgment shall be entered accordingly.
NOTES
[1] Blair v. United States, 1919, 250 U.S. 273, 39 S.Ct. 468, 471, 63 L.Ed. 979:

"In all of these provisions, as in the general law upon the subject, it is clearly recognized that the giving of testimony and the attendance upon court or grand jury in order to testify are public duties which every person within the jurisdiction of the government is bound to perform upon being properly summoned."