**UNITED STATES of America and John G. Nance, Special Agent of the Internal Revenue Service, Petitioners,**

v.

**Wesley B. EDMOND, Respondent.**

**Civ. No. 72-320.**

United States District Court,
W. D. Oklahoma,
Civil Division.

Dec. 20, 1972.

William R. Burkett, U. S. Atty., Givens Adams, Oklahoma City, Okl., for petitioners.

Wesley M. Smith, Wichita, Kan., Theodore Haynes, Oklahoma City, Okl., for respondent.

MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

Petitioners proceed herein under 26 U.S.C. § 7602 and § 7604 to enforce an Internal Revenue Service (IRS) summons served on the Respondent Wesley B. Edmond.

On January 18, 1972 this summons was issued and served on the Respondent directing him to appear before a Special Agent of the IRS and testify and bring certain specified records and documents on February 7, 1972. Such appearance had to do with an investigation then underway as to the correctness of income tax returns filed by Archibald B. Hill for the years 1968, 1969 and 1970. The

Respondent, an accountant, prepared said returns for the taxpayer, an attorney. Included in the records and documents to be produced were the Respondent's work papers. On February 7, 1972 the Respondent appeared but failed or refused to produce the records and documents specified in the summons. This proceeding was filed on May 9, 1972.

Pursuant to a Show Cause Order entered herein by the Court, the Respondent appeared and advised the Court that he could not produce the records and documents as he had delivered the same to the taxpayer. He further advised the Court that he had been unsuccessful in obtaining any of the records and documents back from the taxpayer. The matter was continued from time to time to allow Respondent time to attempt to comply with the summons. No evidence was received during this period.

Eventually it became necessary to set the matter for an evidentiary hearing on the show cause order(s) and on October 26, 1972 such a hearing was conducted at which the Respondent and taxpayer each testified. Legal briefs and oral arguments have since been received by the Court as to the issue of whether the Respondent should be found in contempt for his failure to produce said records and documents.

The evidentiary hearing revealed that the Respondent had the requested records and documents in his possession when the IRS summons was served on him;[1] that the same included Respondent's work papers[2] as well as records and documents furnished to him by the taxpayer; that after Respondent was served with the IRS summons and prior to the scheduled appearance on February 7, 1972 he delivered them to the taxpayer at taxpayer's request; that sometime prior to May 1, 1972 the same were stated by the taxpayer to have been stolen in a burglary of taxpayer's car and thus could not then be produced.

The Court finds and concludes from the evidence presented and the applicable law that Respondent is in contempt and sanctions should be ordered. Respondent urges that any contempt in this matter must be a criminal contempt and not a civil contempt; that a criminal contempt must be based on willful improper conduct on his part which is not present herein as to him. However, the citations relied on by Respondent do not support this contention.[3] It appears quite clear that we are concerned here with a civil type contempt and not a criminal contempt. In Re D. I. Operating Company, 240 F.Supp. 672 (Nev. 1965). However, even though the absence of willfulness does not relieve from civil contempt, McComb v. Jacksonville Paper Company, 336 U.S. 187 at p. 191, 69 S.Ct. 497, 93 L.Ed. 599 (1948), the Court finds under the evi-

---

1. In this connection, the Respondent testified as follows:

    "Q Now, what did you do with those work papers?
    A They were in the file which Mr. Hill picked up during the time of the Oklahoma Tax Commission, they notified him and it was my opinion that he was going to return the entire file.
    Q Did you have those in your possession when you got the I.R.S. summons?
    A To my knowledge I believe I did, yes."
    \*      \*      \*      \*      \*
    "Q Then, you did have work papers, right?
    A Yes, to that extent, yes.
    Q And you did turn them over to Hill?
    A I did, yes.
    Q And you did this after you had an I.R.S. summons in your hand to produce all your records about his case?
    A Your Honor, the—
    Q Now just answer the question.
    A Yes, yes, I did." Tr. 34, Lns. 10–17; Tr. 36, 37, Lns. 25–8

2. See Appendix A, attached.

3. The Respondent cites 17 Am.Jur.2d § 4, pgs. 7 and 8 and § 8 at p. 14; Nye v. United States of America, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941); Mc-Comb v. Jacksonville Paper Company, 336 U.S. 187, 69 S.Ct. 497, 92 L.Ed. 599 (1948); United States v. Kroger Grocery and Baking Co., 163 F.2d 168 (Seventh Cir. 1947); Wilson v. State of North Carolina, 169 U.S. 586, 18 S.Ct. 435, 42 L.Ed. 865 (1898).

dence herein that the Respondent became a willful partner with the taxpayer to put certain of his work papers and other records and documents pertaining to the taxpayer's income for the years involved beyond the reach of the investigating tax authorities.

■ The Court finds and concludes that the Respondent is guilty of civil contempt by dispossessing himself of certain of his own work papers after he had been served with the IRS summons directing him to appear and produce such records, among others, on February 7, 1972. The case of In Re D. I. Operating Company, *supra*, provides that receipt of the IRS summons herein placed a duty on the Respondent to safeguard his own records so that they would be available on the effective date of the summons and that any violation of this duty subjects the Respondent to an appropriate sanction for civil contempt. Also see: United States v. White, 326 F.Supp. 459 (S.D.Texas 1971); United States v. Zakutansky, 401 F.2d 68 (Seventh Cir. 1968).

■ Finding the Respondent to be in civil contempt and in considering an appropriate sanction,[4] the Court is of the opinion that Respondent and taxpayer have suffered the subject work papers to be unavailable. Even if the work papers are still in the possession of the taxpayer the Respondent does not have control over the taxpayer and hence the subject work papers and, moreover, the taxpayer having testified under oath to their theft from him is not likely to recant for fear of a perjury charge. Thus, confinement of the Respondent until there occurs a purging of the civil contempt or confinement of Respondent for a specified time to test his veracity are not believed to be in order. But, the Respondent for his civil contempt should pay compensatory damages in the form of a fine to the United States Government for its costs or expenses incurred in these proceedings to enforce the IRS summons. The Court has received evidence in an adversary proceeding as to such costs or expenses and finds that such costs or expenses amount to $4,040.43 and were incurred by the Government by reason of Respondent's failure to safeguard his work papers after having received the IRS summons and produce the same at the designated hearing and that such costs or expenses are reasonable in amount. The United States Government should therefore have and recover judgment against the Respondent directing him to pay such amount as a compensatory fine to the Government within ninety (90) days from the date of said Judgment.

### APPENDIX A

In this connection, the Respondent testified as follows:

"Q  Mr. Witness, are you a public accountant or a certified public accountant?

A  Public accountant.

Q  Public accountant?

A  Yes, sir.

Q  In the work you did on these tax returns for the three years involved, did you prepare what are known as your own working papers?

A  I attempted to Your Honor but due to the fact that the figures were not there I did not prepare—

---

4. In In Re D. I. Operating Company, 240 F.Supp. 672 (Nev.1965) it is stated that in civil contempt, imprisonment may be imposed provided the Court finds that a Respondent is able to comply and produce the desired records. Apparently this would be indefinite imprisonment. Next, temporary detention for civil contempt, may be used as a method of testing the veracity of a respondent's asserted inability to produce the records. Lastly, the court may award against the contemnor as a compensatory fine a sum reasonably calculated to compensate the contemnee (Government) for all costs incurred in the proceedings to enforce the IRS summons. Thus, the Court has three possible sanctions to consider for application in a given case.

Q Did you have any working papers, and I am talking about, not papers that Hill gave you, but papers that you yourself developed as your own working papers in this case?

A No Your Honor. The only thing that I had relative to Mr. Hill's tax returns were of the work copies of the 1040's and the other schedules.

Q Now, you know what working papers are?

A Yes, I do. You go through a detailed accounting.

Q Isn't it customary when an accountant prepares someone's tax returns that he prepares working papers from which he works to complete the return?

A Very definitely, if he has complete information.

Q And aren't those working papers the property of the accountant and not the taxpayer?

A Yes, sir, they are property of the accountant, yes.

Q Now, my question to you is in the preparation of these returns, did you prepare working papers and if so what did you do with them?

A Your Honor, the only working papers that I have prepared, and I have none in my possession at this time, was the penciled copies of a 1040. The tapes here when I started out to try to determine the income and the bank reconciliation statement when I started out trying to reconcile and reconstruct the bank account.

Q Well then, your working papers were in the form of a 1040 penciled copy?

A That is correct, I think I said that all the way through.

Q You took this penciled copy and made the final return?

A Yes, sir, this is true.

Q Now, what did you do with those work papers?

A They were in the file which Mr. Hill picked up during the time of the Oklahoma Tax Commission, they notified him and it was my opinion that he was going to return the entire file.

Q Did you have those in your possession when you got the I.R.S. summons?

A To my knowledge I believe I did, yes."

\*   \*   \*   \*   \*   \*

"Q You say you did or didn't?

A In my opinion I didn't, because I didn't turn them over to him to keep. He asked to see the work papers.

Q Isn't it a rule that you never surrender these to anybody for any purpose? This is your justification to back up what you did and for your own protection isn't it, as an accountant?

A That is very definitely true."
Tr. 32, Ln. 18—Tr. 34, Ln. 17
\* \* \* Tr. 35, Ln. 19—Tr. 36, Ln. 1