614 F.2d 655
 80-1 USTC P 9242
 UNITED STATES of America and James T. Caffey, Special Agent,
Internal Revenue Service, Petitioners-Appellants,
v.
Clifford H. ASAY, Jr., an accountancy corporation, and
Clifford H. Asay, Jr., as President of Clifford H.
Asay, Jr., an accountancy corporation, Respondents,
and
Arnold L. Kimmes; William B. Feinberg; M & G Amusement
Company; Cavalier Mobile Estates, Inc.; and Mortco
Financing, Inc., Intervenors-Appellees.
UNITED STATES of America and James T. Caffey, Special Agent,
Internal Revenue Service, Petitioners-Appellees,
v.
Clifford H. ASAY, Jr., an accounting corporation, and
Clifford H. Asay, Jr., as President of Clifford H.
Asay, Jr., an accountancy corporation,
Respondents- Appellants,
and
Arnold L. Kimmes; William B. Feinberg; M & G Amusement
Company; Cavalier Mobile Estates, Inc.; and Mortco
Financing, Inc., Intervenors.
 Nos. 76-3164, 3431.
 United States Court of Appeals,
Ninth Circuit.
 Feb. 21, 1980.
 
 William A. Whitledge, Tax Div., Washington, D. C., argued, for U. S. A. and Caffey.
 William A. Whitledge, Washington, D. C., argued, Myron C. Baum, U. S. Dept. of Justice, Washington, D. C., on brief, for respondents.
 Appeal from the United States District Court for the Southern District of California.
 Before GOODWIN, WALLACE, and SKOPIL, Circuit Judges.
 SKOPIL, Circuit Judge.
 
 INTRODUCTION
 
 1
 These appeals arise from an attempt to examine the books and records of a taxpayer. In the case docketed as No. 76-3164 the appellants, United States of America and James T. Caffey, Special Agent, Internal Revenue Service (IRS), appeal from an order denying their motion to compel the intervening taxpayers, Arnold L. Kimmes, William B. Feinberg, M & G Amusement Company, Cavalier Mobile Estates, Inc., and Mortco Financing, Inc., to produce books and records returned to them by their accountant, Clifford H. Asay, Jr., an accountancy corporation, and Clifford H. Asay, Jr., as President of Clifford H. Asay, Jr., an accountancy corporation (Asay), the appellees. In the case docketed as No. 76-3431 the appellants (Asay) appeal from an order adjudging them in contempt for failing to produce taxpayers' books and records pursuant to IRS summonses. The appeals have been consolidated.
 
 FACTS
 
 2
 Before August 1975 IRS had been investigating the income tax liabilities of taxpayers Arnold L. Kimmes, William B. Feinberg, and related business entities. On August 12, 1975 IRS issued six summonses to taxpayers' accountant. They were directed to "Clifford H. Asay, Jr., as President Clifford H. Asay, Jr., An Accountancy Corporation." The summonses required Asay to appear before Special Agent Caffey on August 26, 1975 to testify. He was also requested to produce for examination his records and all books and records of the taxpayers in his possession.
 
 
 3
 Asay consulted his attorney and the attorney for the taxpayers. He was advised to return to the taxpayers all books and records not prepared by the accounting firm. On August 25, 1975, one day before the return date of the summonses, Asay returned taxpayers' books and records to them.
 
 
 4
 On the return date Asay appeared before Caffey. He refused to testify or produce any documents. He explained that he had returned the taxpayers' documents to them. He delivered a letter to Caffey specifying the reasons for his refusal to testify and produce the remaining requested documents.[1]
 
 
 5
 On January 21, 1976 IRS petitioned the district court to enforce its summonses. A show cause order was issued to Asay. Asay filed a responsive pleading and memorandum. The grounds for resisting the summonses were the same as outlined in Asay's letter of August 26, 1975. The defense of impossibility was not mentioned. The affidavits and filed transcripts revealed that the taxpayers' records had been returned to them.
 
 
 6
 On February 17, 1976 the show cause hearing was held. The taxpayers intervened and opposed summons enforcement. On February 20 the district court ordered the summonses enforced. Asay was directed to comply. No appeal was taken. On March 16, 1976 Asay appeared before Caffey and produced for inspection all summoned documents still in the possession of the accounting firm.
 
 
 7
 On April 23, 1976 IRS petitioned the court, requesting that Asay show cause why he should not be held in contempt for failure to produce all the documents summoned. Also an order was requested requiring taxpayers to identify and produce for inspection all papers in their possession that had been in Asay's hands at the time the summonses were served. On April 29, 1976 show cause orders were issued to Asay and the taxpayers.
 
 
 8
 Asay argued he had fully complied with the court's enforcement order. The taxpayers argued that the issuance of the summonses by IRS was a part of an illegal second investigation. The taxpayers also contended that the court lacked jurisdiction to compel them to produce their books and records. An IRS summons had never been issued and directed to the taxpayers. They insisted that to invoke the court's jurisdiction it was necessary that IRS exhaust its administrative remedies, and it was essential that IRS issue summonses to the taxpayers.
 
 
 9
 On June 14, 1976, at the show cause hearing, the court found Asay in contempt. Before a compensatory fine was imposed on Asay, IRS was directed to submit affidavits of its costs. On June 25, 1976 IRS filed its affidavits and application for reimbursement of expenses. In opposition Asay contended that the expenses claimed were unreasonable. The court disallowed certain expenses of IRS. As a compensatory fine for his contempt, Asay was ordered to pay $2,205.57.
 
 
 10
 On September 8, 1976 the court entered its amended findings of fact and conclusions of law. An amended judgment was entered against Asay. A timely notice of appeal was filed.
 
 
 11
 On July 2, 1976 an order was entered denying government's motion to compel taxpayers to produce the summoned documents in their possession. A timely notice of appeal was filed.
 
 ASAY'S APPEAL
 I. Jurisdiction
 
 12
 Asay insists that the district court was without jurisdiction to enter the contempt judgment. He cites 26 U.S.C. § 7401, requiring authorization from the Secretary of the Treasury for commencement of any civil action for the collection of taxes or any fine, penalty, or forfeiture. The government never made a showing of such authorization.
 
 
 13
 This argument is without merit. The fine imposed by the court was not one arising under the Internal Revenue Code. It was a compensatory fine for civil contempt. It was imposed under the court's inherent contempt power. Authorization from the Secretary of the Treasury was not required for the court to exercise this power. It is the responsibility of the court to provide a fair, effective, and orderly judicial process. That responsibility cannot be dependent upon authorization from any outside source.
 
 II. Nature of the Contempt Proceeding
 
 14
 Asay argues the contempt proceeding against him was criminal in nature. He contends the court order was too vague to support a criminal contempt judgment. Furthermore, the court failed to follow the procedures set forth in Fed.R.Crim.P. 42(b).
 
 
 15
 To distinguish criminal from civil contempt it is necessary to determine the nature and purpose of the sanction sought and imposed. This is especially true where, as here, the contumacious act may be either criminal or civil. See In re Stewart, 571 F.2d 958 (5th Cir. 1978); Latrobe v. United Steelworkers, 545 F.2d 1336 (3d Cir. 1976); and Shakman v. Democratic Organization of Cook County, 533 F.2d 344 (7th Cir. 1976), cert. denied sub nom. Chicago v. Shakman, 429 U.S. 858, 97 S.Ct. 156, 50 L.Ed.2d 135.
 
 
 16
 Under the sanction test if the purpose of the relief is to compel the respondent to comply or to compensate the petitioner for the refusal, the contempt proceeding is civil in nature. If the purpose is to punish the respondent and vindicate the court, the proceeding is criminal.
 
 
 17
 The district court imposed a fine intended to compensate IRS for failure to comply with the summonses and enforcement order. The proceeding was for civil contempt. Because Asay may have been unable to comply with the summonses and order at the time the contempt judgment was issued does not mean the fine was for criminal contempt. There are three types of contempt sanctions: punitive, compulsory, and compensatory. The first is a criminal contempt sanction. The latter two are civil. This was a compensatory, civil fine. The district court was not required to follow the procedure outlined in Fed.R.Crim.P. 42(b).
 
 
 18
 Asay argues that the enforcement order is too vague and indefinite to support a judgment of contempt. We disagree. The order referred to the summonses, ordered them enforced, and directed Asay to comply. It was neither vague nor indefinite. Asay understood it. He appeared before Special Agent Caffey to testify and produce those documents remaining in his possession.
 
 III. Impossibility Defense
 
 19
 Asay asserts that he cannot be held in contempt for an act committed prior to the issuance of any court order. Because the district court knew when the enforcement order was entered that some of the papers sought had been returned to the taxpayers, Asay characterizes the proceedings below as an effort to punish an anticipatory contempt.
 
 
 20
 This argument is an attack on the underlying enforcement order. Asay did not appeal from the enforcement order.
 
 
 21
 Finality is a required condition to review. In Steinert v. U. S., 571 F.2d 1105 (9th Cir. 1978), this court discussed finality for purposes of appeal from an order enforcing an IRS summons. Finality occurs when the district court has made a determination on the merits as to the validity of the summoned person's defenses to each question asked and each document requested. When the defense is a fifth amendment privilege, as in Steinert, finality can occur only when a determination on the merits has been made as to the validity and applicability of the privilege to each question asked and each document requested. A fifth amendment defense is not involved in this case. Here there was a determination on the merits as to each defense. The court could, and did, reject in their entirety the defenses raised by Asay and the taxpayers. Chapman v. Goodman, 219 F.2d 802 (9th Cir. 1955). The enforcement order became final and appealable when it was entered.
 
 
 22
 Even if Asay could again raise the defense of impossibility at the contempt proceeding, he would not prevail. Inability to comply with an order is ordinarily a complete defense to a charge of contempt. An exception exists when the person charged is responsible for the inability to comply. U. S. v. Bryan, 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884 (1949); U. S. v. Swingline, 371 F.Supp. 37 (E.D.N.Y.1974). Asay had an absolute right to contest the enforcement proceedings. He could not moot the proceeding by disabling himself. Self-induced inability is not a defense to a contempt proceeding. See In re D. I. Operating Co., 240 F.Supp. 672 (D.Nev.1965).
 
 
 23
 Asay cites no decisions, and we have found none, holding that a contempt sanction is not available against one who defeats a summons by relinquishing possession of summoned documents. There are cases to the contrary. U. S. v. Edmond, 355 F.Supp. 435 (W.D.Okl.1972); U. S. v. Lyons, 442 F.2d 1144 (1st Cir. 1971) (dicta); U. S. v. Schoeberlein, 335 F.Supp. 1048 (D.Md.1971) (dicta). An IRS summons imposes a duty to retain possession of summoned documents pending a judicial determination of the enforceability of the summons.
 
 
 24
 If Asay's analysis were correct, a severe limitation would be imposed on the document producing process. Congress certainly did not intend that result when it enacted 26 U.S.C. § 7602.[2] See U. S. v. Bryan, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1949).
 
 IV. Appropriateness of the Fine
 
 25
 Asay complains that the fine imposed by the district court was excessive because it included expenses unreasonably incurred or not related to production of taxpayers' papers. He suggests he cannot be charged for all of government's enforcement proceeding costs because he had a right to challenge the summonses through an enforcement proceeding.
 
 
 26
 The amount of a compensatory contempt fine is in the discretion of the court. U. S. v. United Mine Workers, 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). Absent an abuse of discretion, we will not disturb the fine imposed. Ordinarily the amount of a compensatory fine is the actual damage caused to petitioner by respondent's contumacious act. Asay did not produce the records. It is impossible to determine how much money the government "lost." Relying on In re D. I. Operating Co., supra, the trial court provided for recovery of all expenses incurred in the issuance, service, return, and enforcement of the summonses.[3]
 
 
 27
 Asay eventually produced some of the summoned documents. Because some documents were produced, he argues that the compensatory fine should not include all expenses incurred by the government in enforcing the summonses. The trial court was not required to make the allocation suggested by Asay. We see no reasonable means of making such allocation. Asay has offered none.
 
 
 28
 Asay contends the wrong time frame was used to measure damages. He maintains that government expenses incurred during the enforcement litigation should not be included in the compensatory fine.
 
 
 29
 It was within Asay's power to avoid the compensatory fine. He need not have subjected himself to the contempt judgment. He had an absolute right to challenge the summonses. We do not suggest he should have forgone his right. He could have retained possession of the summoned documents pending a judicial determination of the enforceability of the summonses. If he disagreed with the determination of the enforceability of the summonses, he could appeal. In this case the enforcement order was final and appealable. He need not have subjected himself to a judgment of contempt to appeal the original enforcement order.
 
 
 30
 We recognize that Asay did obtain legal advice. Willfulness is not an element of civil contempt. McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1948). At some point a person summoned accepts advice at his or her peril. Steinert v. U. S., 571 F.2d 1105, 1108 (9th Cir. 1978). In any event, we tend to agree with the district court that Asay's defiance of the summonses was willful despite the advice of counsel. We find no error in the judgment of contempt and no abuse of discretion in the amount of the fine imposed. The judgment against Asay is affirmed.
 
 GOVERNMENT'S APPEAL
 
 31
 The district court denied the government's motion to compel the taxpayers to produce the summoned records. The record does not disclose the reasons for the denial. The court apparently believed it was without jurisdiction to compel the taxpayer-intervenors to produce the summoned documents. The belief was founded on the government's failure to serve summonses on the taxpayers.
 
 
 32
 A proceeding to enforce an IRS summons is an adversary proceeding. The trial court's decision will not be disturbed unless it is clearly erroneous. U. S. v. Coopers & Lybrand, 550 F.2d 615 (10th Cir. 1977). Considerable discretion is afforded a trial court in all procedural matters in IRS enforcement proceedings. U. S. v. Ruggeiro, 425 F.2d 1069 (9th Cir. 1970), cert. denied sub nom. Ruggeiro v. U. S., 401 U.S. 922, 91 S.Ct. 863, 27 L.Ed.2d 826 (1971); U. S. v. Ahmanson, 415 F.2d 785 (9th Cir. 1969). If, however, the court misunderstood its power or jurisdiction, we must reverse under the "mere error" standard and remand to permit the court to exercise its discretion. In re Equity Funding Corporation of America Securities Litigation, 603 F.2d 1353, 1362 (9th Cir. 1979); DSI Corp. v. Secretary of Housing and Urban Development, 594 F.2d 177 (9th Cir. 1979).
 
 
 33
 Before IRS is entitled to judicial enforcement of its summonses under 26 U.S.C. § 7402(b),[4] it must show, among other things, that it has followed the required administrative procedures. U. S. v. Church of Scientology of California, 520 F.2d 818 (9th Cir. 1975). Normally this requires service of summons and a refusal to comply. Nevertheless, if the rights of a person have been fully protected in a judicial proceeding, IRS will not be required to perform a useless act.
 
 
 34
 Taxpayers intervened in the original enforcement action. They appeared and opposed the summonses vigorously. Intervention is adequate to protect the taxpayers' interests. Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964). Once the taxpayers intervened, they subjected themselves to the personal jurisdiction of the court. City of Santa Clara, Calif. v. Kleppe, 428 F.Supp. 315 (N.D.Cal.1976), aff'd in part, rev'd in part on other grounds, 572 F.2d 660 (9th Cir. 1978), cert. denied, 439 U.S. 859, 99 S.Ct. 177, 58 L.Ed.2d 168 (1979).
 
 
 35
 The district court had jurisdiction to compel production of the papers under 26 U.S.C. § 7402(a)[5] as well as § 7402(b).
 
 
 36
 In a different factual context, the Second Circuit discussed section 7402(a):
 
 
 37
 "The language of this statute is broad and clear. In addition to authorizing writs and orders ancillary to civil actions, it gives the district courts jurisdiction to issue 'such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws.' We decline to construe such a broad statutory mandate so restrictively as to add nothing to the power conferred by the All Writs Act, 28 U.S.C. § 1651 (1970)." U. S. v. First National City Bank, 568 F.2d 853 (2d Cir. 1977) (fn. omitted).
 
 
 38
 The statute has been construed liberally in cases involving jurisdiction to grant orders sought ex parte by IRS. See Matter of Carlson, 580 F.2d 1365 (10th Cir. 1978); U. S. v. Mellon Bank, N.A., 521 F.2d 708 (3d Cir. 1975). The provisions of the statute have conferred jurisdiction over government's tax claims brought in intervention in interpleader actions. Miller & Miller Auctioneers, Inc. v. G. W. Murphy Industries, Inc., 472 F.2d 893 (10th Cir. 1973). After full litigation of the issues the court does have authority to compel parties in intervention to produce documents in their possession.
 
 
 39
 The government is not entitled to the order it seeks as a matter of law. The district court's decision to enforce the summonses served on Asay was not dispositive of government's right to obtain the summoned documents from taxpayers. A motion to compel the production of documents is directed to the discretion of the court. We remand to permit the district court to exercise that discretion.
 
 
 40
 The judgment in No. 76-3431 is affirmed. The order appealed from in No. 76-3164 is reversed and remanded.
 
 
 
 [1]
 Asay asserted in the letter that he was resisting the summonses on six grounds: 1) "(t)he Fourth Amendment privileges"; 2) the information was already in the government's possession; 3) the statute of limitations as to the open years had run; 4) the requests for production were second examinations unlawful under 26 U.S.C. § 7605(b); 5) the summonses constituted an abuse of discretion; and 6) the summonses constituted selective law enforcement
 
 
 [2]
 Section 7602: "For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized
 (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
 (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
 (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."
 
 
 [3]
 The district court carefully evaluated each of the items claimed by the government and disallowed certain travel expenses because it agreed with Asay that the matter could have been handled by the local United States Attorney's office
 
 
 [4]
 Section 7402(b): "If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or some other data."
 
 
 [5]
 Section 7402(a): "The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of ne exeat republica, orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws."