**UNITED STATES of America, and Ralph Scheidt, Special Agent of Internal Revenue Service, Petitioners-Appellants,**

**v.**

**Anun SEETAPUN, M.D., S.C., a corporation, Respondent-Appellee.**

No. 84–1538.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 1, 1984.

Decided Dec. 10, 1984.

Rehearing and Rehearing En Banc Denied Jan. 11, 1985.

John A. Dudeck, Jr., Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D.C., for petitioners-appellants.

Michael Dockterman, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for respondent-appellee.

Before CUMMINGS, Chief Judge, and BAUER, and POSNER, Circuit Judges.

CUMMINGS, Chief Judge.

The government appeals from the district court's discharge of its rule to show cause against Dr. Anun Seetapun and his wife Marcia Seetapun and its denial of an order for contempt against the corporation Anun Seetapun, M.D., S.C. We reverse and remand.

**I**

The litigation now before us began when the Internal Revenue Service ("IRS") issued an administrative summons to Anun Seetapun, M.D., S.C. (the "Corporation") on February 15, 1983. The Corporation is a medical service corporation through which Dr. Seetapun ("Anun") engages in the practice of plastic surgery. The IRS summons requested business and financial records, including records containing patients' names, treatment records, and other information. The Corporation refused to give the IRS those documents, asserting they were protected by the physician-patient privilege.

On August 26, 1983 the IRS instituted proceedings in the district court to enforce the summons.[1] The Corporation responded to this petition on October 14th, declining to produce documents pertaining to receipts, patient statements and public aid statements, again on the ground of the physician-patient privilege. A hearing was held on November 4th to evaluate this claim, at which time the district court directed the parties to confer and try to reach an agreement.

No agreement was forthcoming, and the government renewed its petition to enforce on December 12th. A pretrial conference was held on December 20th, and the following day Judge Getzendanner issued an order directing the Corporation to produce all books, records and papers requested by the summons by 4:30 p.m. on January 3, 1984 for her *in camera* review. The order stated that the Corporation "shall raise such further objections to compliance with the summons as it may have" at a status hearing on January 4th. (U.S.App. 1a—2a.)

On January 3rd Anun filed an affidavit stating he did not have possession of the documents, did not know where they were, and had made an unsuccessful demand for them from his wife Marcia Seetapun ("Marcia"), who did have custody of the records (*id.* 3a—4a). Following the status hearing the next day, the district court ordered Marcia to bring the requested documents to court on January 6th, and issued an order to show cause why Anun and Marcia should not be held in contempt of court (*id.* 5a).

At the evidentiary hearing on January 6th, the court heard the testimony of Anun and the arguments of Marcia's lawyer that the district court lacked jurisdiction over her. At the conclusion of the hearing the district court (1) discharged its order to

---

1. The individual named in the IRS petition, Ralph Scheidt, is the IRS Special Agent investi-    gating this matter.

show cause against Anun, (2) vacated it as to Marcia for lack of jurisdiction and (3) refused to hold the Corporation in contempt of its order. The court did issue a preliminary injunction ordering the Corporation to refrain from destroying any documents called for by the subpoena. This order was made binding upon the Corporation, its agents, employees, officers, servants and attorneys, and upon those persons in active concert or participation with those who receive actual notice of the order. (*Id.* 6a.) As such, the order would forbid the custodian Marcia to destroy any corporate records in her possession. While the issuance of the preliminary injunction is not contested on appeal, the government does dispute the district court's decision on the aforesaid three matters.[2]

## II

■ The threshold issue presented is whether this Court has jurisdiction over the appeal. As a general rule, an order must be final in order to be appealable. That determination depends in this case on the characterization of the January 6th hearing. The district court stated in its February 29 Memorandum Opinion and Order concerning its January 6th order that "[t]he enforcement proceedings against the corporation continue to be outstanding" (*id.* 11a). The district judge also stated that should Marcia return the documents to the Corporation, it would then "be in a position to respond to the outstanding subpoena" (*id.*). Clearly the lower court was convinced that it had not yet taken final action on the government's request for enforcement of its summons, a conclusion buttressed by several remarks of the district judge at the January 6th hearing. The court below stated that the case "was not over" and that it would wait for "the government to bring something to my attention" should it wish to proceed (Anun App. 48). The district judge believed that the service by the government of a sum-

mons upon Marcia directly would solve the problems presented, since any court proceeding to determine Marcia's defenses to that summons would obviate the need for further proceedings with reference to the Corporation (*id.* 48–49).

Resolution of the finality issue by the court below is troubling in light of the conflicting statements made by the court and the assumptions underlying the court's conclusion. Although asserting that the case was not over, the judge also stated that it was a "closed case" (*id.* at 49), and that there was nothing more for the court (*id.* at 48). More importantly, the district judge's statement that the enforcement proceedings were continuing is bottomed on the belief that the service of a summons on Marcia, which would start an independent proceeding, would render the instant case moot (*id.* at 51–52). While that assumption may be correct, it does not answer the question whether the January 6th proceeding resulted in a final, appealable order. Nor does it suggest what purpose would be served by keeping the case open. The district judge unequivocally stated that the Corporation would be in a position to comply with the summons only if Marcia turned the requested documents over to the Corporation. But Marcia would assert her defenses in the independent proceeding relating to the summons served specifically on her. Consequently the documents will most likely be surrendered, if at all, not to the Corporation but to the government through the independent proceeding. On analysis, as far as the Corporation is concerned, the proceedings in the district court have terminated. Thus we see no bar to treating the action taken by the trial court as final.

Nonetheless we do not accept the government's contention that its summons had been enforced in December and that the January 6th hearing was an IRS contempt proceeding within the meaning of 26

---

**2.** The government served Marcia with a separate summons on January 6th, which it claims is a "protective matter" only due to the district court's ruling that it had no jurisdiction over

Marcia (Govt. Brief at 22, n. 8). Regardless of motivation, that proceeding is independent of this one and does not affect the outcome here.

U.S.C. § 7604(b). Not only did the district court on January 6th state that the hearing was to determine whether to issue a contempt citation for failure to comply with the court's January 4th order, "something totally different from any IRS contempt proceeding" (Anun App. 33), but the court had informed the Corporation in December that it could raise any further defenses it wished at the January 4th status hearing. If that status hearing indeed had been part of an IRS contempt proceeding, then allowing the Corporation to raise new defenses not asserted previously would be contrary to the Supreme Court's decision in *United States v. Rylander*, 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (party cannot raise at contempt proceedings defenses that could and should have been raised in enforcement proceedings). We decline to interpret the district court's actions in a way contrary to a clear Supreme Court mandate. In addition to the district court's comments previously mentioned, the court below also stated, in response to the government's request that it find the Corporation in contempt on January 6th, that "I might do that, but I am not going to do it this afternoon [January 6]. It's a new idea and I think I'd have to give counsel an opportunity to respond to that." (Anun App. 46.)

No harm accrues to the Corporation from our treatment of the district court's rulings of January 6th and February 29th as a denial of the government's enforcement request. The Corporation had ample opportunity to present all its available defenses, having been warned by the district judge on December 21st that it should do so on January 4th (U.S.App. 1a). The Corporation may not now argue that it was prejudiced or denied due process of law. Accordingly, we will treat the court's February 29th order, in the light of its January 6th order, as denying the government's request for an enforcement order against the Corporation and hence as a final appealable order.[3] The February 29th decision being final, the district court's findings therein regarding Anun and Marcia, as well as those concerning the Corporation, are ripe for review.

### III

■ Since this Court has jurisdiction, the next issue is whether the district court erred in refusing to hold Anun and the Corporation in contempt. We conclude that the district court's findings that Anun and the Corporation lacked control of the documents were clearly erroneous.[4] In these proceedings, the taxpayer carries the burden of establishing affirmative defenses. *United States v. Kis*, 658 F.2d 526, 542 (7th Cir.1981). In some situations, a taxpayer might be heard to claim that he was unable to obtain documents within the con-

---

3. Our interpreting the district court's February 29th decision in this way accords with Judge Swygert's opinion in *United States v. Kis*, 658 F.2d 526, 529 (7th Cir.1981), establishing "rules and procedures to be followed within our circuit" in IRS summons enforcement cases. He stated that "we cannot stress too emphatically that these proceedings are intended to be summary in nature. They occur, after all, at only the investigative stage of any action against a taxpayer, and no guilt or liability on the part of the taxpayer is established." *Id.* at 535. Consequently, "[t]he action should be concluded quickly, so that the investigation may advance toward the ultimate determination of civil or criminal liability, if any." *Id.*

4. What standard is appropriate is unclear. *United States v. Kis, supra* n. 3, did not address this issue. In *United States v. LaSalle Nat'l Bank*, 554 F.2d 302, 306 (7th Cir.1977), reversed on other grounds, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221, this Court held "that the clearly erroneous standard governs review of findings that an IRS summons has or has not issued in good faith." Logically this holding shoudl extend to the district court's finding whether or not those summoned have control over requested documents, or whether or not they have made reasonable efforts to regain missing records. The Ninth Circuit accepted the "clearly erroneous" standard in *United States v. Asay*, 614 F.2d 655 (9th Cir.1980). The Third Circuit has adopted *de novo* review of a district court's determination of bad faith as review of a legal conclusion drawn from facts. *United States v. Cortese*, 614 F.2d 914 (3d Cir.1980). See also *United States v. Stuckey*, 646 F.2d 1369, 1373 (9th Cir.1981) (collecting cases), certiorari denied, 455 U.S. 942, 102 S.Ct. 1436, 71 L.Ed.2d 653. We need not answer the question, for the district court's findings do not pass muster even under the "clearly erroneous" standard.

trol of his wife. But such circumstances are not present here. Anun's "demand" for the documents consisted of no more than meeting with his wife in his lawyer's office, their both reading, for the first time, the contents of the affidavit Anun later signed stating that he had demanded the documents from Marcia and she had refused, and Marcia's refusal by silence to turn over the documents (Anun App. 14). On cross-examination the government asked Anun whether he had taken any other steps to reclaim the documents. He said that he had not. He also stated that Marcia had not refused to turn over the documents; rather she had merely given "no response." (*Id.* at 14–15.)

Although Anun asserts that he searched for the missing documents in his office and at home and failed to find them (*id.* at 19), his responsibilities surely go further than a *pro forma* demand and cursory search for records. It is true, as the district court said, that the mere fact of Anun and Marcia's marriage does not require that the court find that Anun had control over the documents. But neither does it mandate a finding of non-control, which the district court's opinion on these facts suggests. Marcia may believe that withholding the documents is to her advantage, but her doing so is also to Anun and the Corporation's advantage by frustrating the government's request for the documents and so delaying its investigation of possible tax liability. Marcia and Anun are plainly not dealing at arm's length in this matter, and the district court committed clear error in failing to recognize that fact. It borders on the ludicrous to accept Anun's testimony that for ten years he has given all documents to his wife, who deals with them in their home; has never in those ten years seen again any of those documents, including patient treatment records; has no idea where they are kept; and after a search of both his office and his apartment could not find them. His behavior resembles that of those responsible for their own inability to comply with enforcement orders and should be analyzed similarly. See *United States v. Bryan*, 339 U.S. 323, 330–331, 70 S.Ct. 724, 730–31, 94 L.Ed. 884; *United States v. Asay*, 614 F.2d 655, 659–660, (9th Cir.1980) (accounting firm had returned taxpayers' records to them before return date of administrative summons); *In re D.I. Operating Company*, 240 F.Supp. 672, 677 (D.Nev.1965) (records disappeared, apparently due to negligence and not to malice, sometime during three years that court summons was being appealed; they were unavailable despite "exhaustive search" having been made).[5] Add to these facts that Anun is the president and sole director, employee and shareholder of the Corporation, and the district court's finding that he made "reasonable efforts" (U.S. App. 8a) to recover the documents is not tenable.

The Corporation's legal responsibilities support the result we reach. The Business Corporation Act § 45, Ill.Rev.Stat. ch. 32, § 157.45 (1983), requires corporations to "keep correct and complete books and records of account," a provision that applies to the Corporation through the Medical Corporation Act § 3, *id.* § 633. The Medical Corporation Act further provides, "All of the officers, directors and shareholders of a corporation subject to this Act shall at all times be persons licensed pursuant to the Medical Practice Act. No person who is not so licensed shall have any part in the ownership, management, or control of such corporation." Medical Corporation Act § 13, *id.* § 643. Anun is totally responsible for managing and controlling the Corporation; yet he is arguing not only that he has absolutely no control over the books and records the Illinois Business Corporation Act requires the Corporation to maintain, but by inference that no legal action is available to him or to the Corporation. Despite these obligations, the only

---

**5.** Absolute control over another's action is not necessary to a finding of liability. See *United States v. Bestline Products Corp.,* 412 F.Supp. 754, 763–67 (N.D.Cal.1976). Nothing in the record indicates that Marcia would have defied Anun regardless of his wishes. She was doubtless complying with his tacit wishes to retain the records in her possession.

attempt made on behalf of the Corporation to regain the documents, according to the record, was a request for them at Anun's and the Corporation's lawyers' office, a request refused by silence rather than by any statements or acts of defiance. Furthermore, Anun made this request subsequent to his lawyers' presenting him for the first time with an affidavit to sign stating that he had made the required request and been refused. This contrived dodge must not be allowed to defeat the investigatory powers of the IRS.

Two cases serve to illuminate the situation. In *United States v. Hayes*, 722 F.2d 723 (11th Cir.1984), defendant Hayes certified that he had made two trips from the United States to Switzerland to obtain foreign partnership records from his Swiss partner, who had refused him both times due to the Swiss partner's concern about a separate tax investigation. Nonetheless, the Eleventh Circuit vacated the district court's denial of a contempt order because it believed that Hayes had not made all reasonable efforts to comply. While that case arose in a contempt posture rather than a denial of enforcement, the decision is nonetheless relevant. The court of appeals based its conclusion on the availability of legal remedies Hayes could have used to reacquire the documents. Similarly, both Anun and the Corporation could have instituted legal proceedings against Marcia to regain the records. Their failure to investigate that and other possibilities evidences an intolerable disregard for the court's order of December 21 and the enforcement proceeding in general.

*Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, does not call for a contrary result. There Wilson, the president, had custody of the corporate records and removed them to his home, where they were beyond the effective reach of the corporate directors. The Supreme Court accepted the directors' claim that they were unable to produce the documents request-

ed. The differences between that case and the instant one are significant. First, in *Wilson*, the books were in the president's home which the directors could not search. Given the probability that the records here are located somewhere in Anun's apartment, he can certainly find them there, aside from all other measures that he could take to retrieve them. Second, the directors in *Wilson* adopted a formal resolution requesting the president to return the documents. This formal, legally binding action differs radically from the weak attempts, if any, by Anun to convince Marcia to return the documents.[6] Nor has the Corporation undertaken any of the legal remedies available to it to retrieve its corporate records. Finally, and most compelling, is the Court's statement: "The appellant [Wilson] did not attempt to assert any right on [the corporation's] part; his conduct was in antagonism to the corporation, so far as its attitude is shown." *Id.* at 376, 31 S.Ct. at 542. Conversely, Anun and the Corporation's interests parallel those of Marcia, so that they have no compulsion, beyond those that their legal responsibilities alone can provide, to exert real efforts to regain the documents. Unlike the corporate directors in *Wilson*, Anun and the Corporation have not evidenced through formal legal action any sincere attempts to regain the missing records. The district court's discharge of its order against Anun and refusal to hold the Corporation in contempt leading to its denial of the government's enforcement order were clearly erroneous; the court below should have rejected the superficial excuses of Anun and the Corporation and entered the enforcement order the government requested.

### IV

■ Even were one to believe that the district court rightly found that Anun had no control over the documents and that he and the Corporation had exhausted all ef-

---

6. Anun's counsel evidently believes that the only additional action available to Anun beyond the *pro forma* demand would be "to do violence to whoever it is he thinks may have the records to

extract from them something" (Anun App. 46). Such an attitude is unjustifiably inflexible and unacceptable.

fective legal remedies available to them, so that Marcia's intransigence effectively disabled the Corporation from complying with the IRS summons, the district court erred in finding it lacked personal jurisdiction over Marcia. We note that where a district court "misunderstood its power or jurisdiction," the "mere error" standard of review is appropriate. *United States v. Asay*, 614 F.2d at 661.

Despite the district court's finding that "in acceptable nomenclature, [Marcia] was chief financial officer" (Anun App. 37), the court insisted on treating her as an employee so that the direction of the summons to the Corporation alone and not to her supposedly defeated the court's jurisdiction. The court explained that "she had no formal office and no formal responsibility to act on behalf of the corporation with respect to the subpoena" (U.S.App. 10a). This conclusion is certainly correct. But using it to justify treating Marcia as a mere employee is unsupportable and is unexplained by the district court. The court acknowledged that Marcia functioned as an officer, and had done so for ten years with the acquiescence of Anun. That her position is *de facto* and not *de jure* is not dispositive.[7] When such situations have arisen in the past, courts have not hesitated to require *de facto* officers to accept responsibility for their actions on behalf of the corporation. See, *e.g.*, *South Seas Corporation v. Sablan*, 691 F.2d 508 (9th Cir. 1982); *Jack v. Oakbrook Terrace Community Park District*, 31 Ill.2d 390, 202 N.E.2d 7 (1964). That Marcia lacked any formal office means the district court

should have examined the facts, and, finding that she in fact was an officer, so treated her, rather than treating her as an employee.

As an officer, Marcia has responsibility for enabling the Corporation to comply with orders directed to it. The Supreme Court stated in *United States v. Wilson*, 221 U.S. at 376, 31 S.Ct. at 542:

> A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.

*Wilson* is particularly apt, because it involved subpoenas directed to the corporation only, not naming individual officers or directors.[8] Under *Wilson* Marcia cannot be allowed to claim that she is not bound by the summons on the Corporation when she is an officer of that same Corporation.

Not only is Marcia responsible for ensuring to the best of her ability that the Corporation comply with the summons, but the district court would have been well within its rights in ordering her to comply when it appeared that Anun lacked the necessary documents and that she had them. In *United States v. Miller*, 638 F.2d 39 (8th Cir.1980) (*per curiam* ), the Eighth Circuit summarily dismissed the president of the corporation's claim that the district court lacked personal jurisdiction over him be-

---

7. Nor is it relevant that Illinois law would bar her from holding such office, because she, as far as we know, has no medical license. See Medical Corporation Act § 13, Ill.Rev.Stat. ch. 32, § 643 (1983). That statute does not alter the reality of her position in, and responsibility for, the Corporation. If it did, preemption analysis would bar this Court from relying on it to defeat the enforcement of the federal revenue laws.

8. Although the corporate president and several of the directors in *Wilson* were served with the subpoenas, the Supreme Court did not distinguish between officers served with subpoenas

and those not so served in its statements regarding officers' responsibility for the corporation. See *United States v. Wilson*, 221 U.S. at 374, 31 S.Ct. at 541 ("Where the documents of a corporation are sought, the practice has been to subpoena the officer who has them in his custody. But there would seem to be no reason why the subpoena duces tecum should not be directed to the corporation itself."). What is interesting to note is that the first subpoena served on the corporation in *Wilson* was served on the corporation's secretary as well as two directors, yet evidently only Wilson appeared to testify before the grand jury. *Id.* at 368, 31 S.Ct. at 539.

cause the summons involved there was directed to a former director and trustee rather than to him, and presumably rather than to the corporation. The court explained that the resignation of the named trustee justified the district court's determination "that the enforcement order could best be complied with by directing the [corporation's] president to produce the summoned materials." *Id.* at 40. Similarly, the revelation in January that Anun did not have the records empowered the district court to enforce the summons through an order against the person who did possess the records, *de facto* officer Marcia.[9] But because Marcia has had no opportunity to appear before the district court to raise any privileges that may be available, she must be allowed to do so.

The district court order is vacated and the cause is remanded in accordance with Circuit Rule 18 for further proceedings consistent with the views expressed herein.

---

**9.** That the proceedings in *Miller* arose after the entry of the enforcement order, rather than before, does not affect the court's determination of its power to hear the case. Like Marcia, the defendant argued in *Miller* that he lacked notice of the proceedings because he had received no summons. The court properly rejected this contention, holding him responsible for the Corporation's action. The timing of when the question arose was irrelevant to its determination, and its disposition of the case governs the instant situation.